DEBORAH M. SMITH
Acting United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
MICHAEL J. BURKE
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
frank.russo@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:06-cr-00041-4-RRB |
| | ) | |
| Plaintiff, | ) | **UNITED STATES' MOTION** |
| | ) | **FOR APPEAL OF RELEASE** |
| vs. | ) | **OF DEFENDANT PURSUANT** |
| | ) | **TO 18 U.S.C. § 3142(f) AND** |
| CURTIS H. MCDONALD, | ) | **MOTION FOR STAY OF** |
| | ) | **RELEASE ORDER** |
| | ) | |
| Defendant. | ) | **Filed on Shortened Time** |
| | ) | |

COMES NOW plaintiff United States of America and, pursuant to 18 U.S.C. § 3145(a)(1), hereby appeals the release of the defendant by Magistrate Judge John D. Roberts on May 2, 2006.  The defendant was released on conditions that he

remain in the custody of his best friend and sister. In addition, the defendant was required to post a $20,000 cash or corporate bond.

## The Facts of the Instant Case

The defendant has been charged in two counts of a multi-defendant conspiracy indictment with Conspiracy to Import and Distribute Marijuana. The indictment further alleges that the defendant's role in this particular conspiracy was to both drive marijuana and money to and from Canada. In particular, overt act 16 of the indictment alleges that on February 2, 2006, the defendant drove a trailer "containing approximately 400 pounds of Canadian marijuana in a hidden compartment, crossed the border from Canada into Alaska." The indictment further alleges that the defendant "claimed he was coming from Skagway, Alaska and after delivering parts for a government project." Further, the indictment alleges in overt act 26, that "on or about March 14, 2006, [the defendant] crossed the border into Canada . . . to drop off $400,000 as partial payment for the next shipment of marijuana." During the period of the conspiracy, the indictment alleges that the conspiracy was responsible for over $10 million in drug proceeds. Due to the seriousness of the charges, the presumption of detention contained in 18 U.S.C. § 3142(e) applies to this case.

Presumption of Detention - 18 U.S.C. § 3142(e)

There is a rebuttable presumption that a defendant charged with a controlled substance offense for which the maximum penalty is ten years or more represents both a flight risk and a danger to the community. 18 U.S.C. § 3142(e). Such charge alone is enough to raise the presumption that no combination of release conditions can assure the defendant's appearance for trial and the safety of the community. United States v. Dillon, 938 F.2d 1412, 1415 (1st Cir. 1991).

Faced with the presumption against him, a defendant must produce "some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community." United States v. Carbone, 793 F.2d 559, 560 (3rd Cir. 1986); Id. Although the evidence need not be great, the presumption is not a "bursting bubble" that will disappear when any evidence is presented by the opponent of the presumption. United States v. Jones, 804 F. Supp. 1081 (S.D. Ind. 1992). Rather, the evidence must rebut in some fashion the presumption that the defendant is both dangerous and a flight risk. As such, the evidence presented by the defendant must at least relate to both of these factors. See United States v. Stricklin, 932 F.2d 1353, 1355 (10th Cir. 1991) (defendant attempted to rebut presumption with evidence about his family ties, prompt reporting for serving earlier prison sentence, and conditions of release).

Even if the defendant comes forward with sufficient relevant evidence to rebut both the presumptions against him, the statutory presumption that he is a flight risk and a danger to the community retains evidentiary weight. The presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relative to factors listed in section 3142(g)." United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990), quoting, United States v. King, 849 F.2d 485, 488 (11th Cir. 1988).

The government retains the ultimate burden of persuasion on both issues. To detain the defendant, the Court must be convinced either (1) by clear and convincing evidence that the defendant presents a danger to the community, or (2) by a preponderance of the evidence that he is a flight risk. United States v. Mercedes, 254 F2d. 433, 436 (2nd Cir. 2001).

The Detention Hearing

The defendant has no criminal record. He presented the testimony of the three third party custodians that were willing to supervise him. The defendant's wife testified that she knew little about the defendant's travels to Canada, other than that he traveled there with trailers on three occasions that she could recall to pick up parts in a trailer. The defendant's wife claimed that she did not know who the defendant was working for or how much he was being paid for these trips. She

also claimed that she did not talk to the defendant while he was away, as he told her that his cell phone did not have a signal in Canada. Two other third parties testified: the defendant's sister and his best friend. All third parties expressed a willingness to supervise the defendant if he were released.

The defendant testified at the detention hearing about his community ties and about one trip, in or about late January to early February, that he made to Canada at the direction of Thomas Ranes, who is charged as the lead defendant in the indictment. The defendant claimed that he had no knowledge of the marijuana hidden in the decking of the trailer he was hauling. He claimed that he was not paid for his week-long trip to Canada, other than $5,000 in expenses. He claimed that Ranes told him that he was being sent to pick up iron. He drove to the Vancouver area, and lent his truck and the trailer to an unknown Canadian who he could not particularly describe. This Canadian later returned the truck and trailer to him days later. The defendant then claimed he was told by Ranes that the part he was seeking to pick up was not ready, and that he should return to Alaska.

The defendant claimed that Ranes told him to lie to the U.S. Customs and Border Patrol agents and tell them that he was coming from Skagway to drop off parts for a government project. The defendant claimed that Ranes told him that this would expedite his time at the border. The defendant then told this lie to U.S.

Border patrol agents. The defendant brought the truck and trailer to Ranes at the Ranes & Shine automotive shop. He left his truck there, and took Ranes' truck home. The defendant gave no explanation why he did not simply detach his truck from the trailer and drive it home. The next day, the defendant returned Ranes's truck to him and picked up his own truck.

The defendant also claimed that he returned to Canada on March 15, 2006, for a vacation. The defendant claimed he went to Whitehorse for about three days, visited a hunting guide business that he could not identify, and returned to Alaska. When the defendant returned (approximately three days later), the defendant testified that he told U.S. Border Patrol agents that he was in Canada for pleasure.

## The United States' Evidence

The United States called Special Agent Mark Schmidt of the Drug Enforcement Administration in rebuttal to the defendant's testimony and release plan. Agent Schmidt testified that a customs alert had been placed for the defendant in January 2006, as investigators knew he would be transporting marijuana. Agent Schmidt testified that the defendant did in fact lie to U.S. Border Agents on February in stating that he had been to Skagway to deliver parts for a government project. Indeed, the border nearest Skagway showed no crossings for the defendant. Moreover, Agent Schmidt testified that the border alert for the

defendant remained in effect throughout March. Agent Schmidt testified that investigators reviewed video that showed that the defendant drove to Canada in his truck on March 14, 2006. Contrary to the defendant's testimony, Agent Schmidt testified that border agents confirmed that the defendant returned to the United States the very next day, on March 15, 2006. Moreover, Agent Schmidt testified that the defendant told U.S. Border Patrol Agents that he (the defendant) was just returning to Alaska after delivering a trailer for "work" to Haines, Alaska. This statement was in direct conflict with the defendant's testimony, and there was no evidence of the defendant crossing the border near Haines.

Further, Agent Schmidt testified that investigators received evidence from one of the co-defendants, post-arrest, that the defendant was paid $30,000 per trip, likely in cash, by Ranes to transport marijuana. This co-defendant knew of two such trips, and one delivery of money, that the defendant participated in. Agent Schmidt testified that the marijuana the defendant drove into the United States on February was suspected to be 400 pounds, worth approximately $1.4 million dollars.

Magistrate Judge Roberts Decision

Magistrate Judge Roberts found that the defendant's wife was not entirely candid with the Court, and did not approve her as a third party custodian for the defendant. Instead, he found that the presumption was rebutted by the testimony of the defendant's best friend and sister. Judge Roberts found the defendant's testimony "less than credible" (or words to that effect), but stated that he would not make a finding that the defendant perjured himself, as such a finding could be used to further incriminate the defendant. Therefore, Magistrate Judge Roberts found did not give any weight to the defendant's possibly perjured testimony, as he stated that it was a matter to be resolved at trial. Accordingly, the court found that the defendant had rebutted the presumption contained in 18 U.S.C. § 3142(e), and released him to his sister and his best friend.

The United States Position on Appeal

The United States submits that the defendant's perjured testimony is a significant factor to be taken into account in deciding whether to release him. Indeed, 18 U.S.C. § 3142(g) explicitly states that "the judicial officer <u>shall</u>, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning "the history and characteristics of the person, including the persons character . . . ". 18 U.S.C.

§ 3142(g)(1)(3)(A). The fact that there was evidence that the defendant lied to the court in testimony should be taken into consideration. In sum, the defendant testified that he went to Whitehorse on or about March 14, 2006 for about three days on a pleasure trip. The defendant testified that he told the border agents that he had been in Canada for pleasure. Both these statements were lies. Agent Schmidt testified that the defendant had only been in Canada for one day (to drop off approximately $400,000 dollars). Agent Schmidt testified that there were border records and video to support this. Further, Agent Schmidt testified that the defendant told the border agents that he was coming back from Canada after dropping off a trailer in Haines for work. Again, Agent Schmidt testified that border records and video belied such a claim. In any event, such a statement is inconsistent with his in-court sworn testimony. Accordingly, there is strong reason to believe that the defendant gave false statements under oath at this own detention hearing.

Moreover, other factors outlined in 18 U.S.C. § 3142 support detention of the defendant:

*(1) Nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug.* The crime at issue

involves marijuana, and a multi-year, multi-defendant, multi-national, multi-million dollar conspiracy.

*(2) the weight of the evidence against the person.* The weight of the evidence against the defendant is compelling. Not only does the United States have several false statements he gave to U.S. Border Patrol Agents (as well as the Magistrate Judge), but a co-defendant has already stated that the defendant has made at least two trips for Ranes, one trip to deliver money, and the defendant has been paid $30,000 per trip. The fact that he was driving over $1 million dollars in drugs from Canada belies a claim of lack of knowledge.

*(3) the history and characteristics of the person, including –*

*(A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court proceedings.* While the defendant clearly has community ties and no criminal history, as noted above his character was impeached at the detention hearing, and the fact that he willingly lied to two different border agents not only assails his character, but subjects him to potential charges for false statements to a federal agent, in violation of 18 U.S.C. § 1001, as well as perjury charges.

*(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.* Apart from the obvious dangers of the crime itself, the indictment alleges a serious international drug trafficking conspiracy with multiple seizures of marijuana. Such serious criminal activity raises dangerous consequences, particularly where, as here, over $1 million dollars in marijuana was seized by investigators. Indeed, the indictment alleges that there is at least one missing co-conspirator who participated in the criminal activity alleged therein.

The defendant currently faces a mandatory minimum sentence of ten years in federal prison. His claim of lack of knowledge of the conspiracy is belied by his own false statements and other co-conspirators. His incentive to flee is great. These facts, coupled with his perjured testimony, compels the conclusion that the defendant is a serious flight risk. See <u>Striklin</u>, 932 F2d at 1355 (defendant who was involved with a drugs and had the capacity for flight was properly detained). Indeed, a defendant who is willing to lie to the court to get out of jail is likely willing to flee to avoid jail time. In sum, the United States has shown by clear and convincing evidence that he defendant is a flight risk and a danger to the community.

Conclusion

Pursuant to 21 U.S.C. § 3142(e), the defendant is presumed a flight risk and a danger to the community. The facts of this case substantiate this presumption. Moreover, the United States respectfully submits that Magistrate Judge Roberts erred when he declined to take into consideration the defendant's testimony, which the court itself admitted appeared to be "less than credible" (or words to that effect). Accordingly, the United States requests the Court stay the release order for the defendant, and find that there are no conditions or combination of conditions that would ensure the defendant's return to Court to face trial.

RESPECTFULLY SUBMITTED this 2nd day of May 2006, in Anchorage, Alaska.

DEBORAH M. SMITH
Acting United States Attorney

s/ Frank V. Russo
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
(907) 271-1500 (fax)
Frank.Russo@usdoj.gov

**CERTIFICATE OF SERVICE**
I hereby certify that on May 2, 2006,
a copy of the foregoing served
electronically on William English.

s/ Frank V. Russo